# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

In the Matter of the Search of:

Three electronic devices currently in MPD Property
Inventory #19038536, as Item #6, Item #15, and Item #22

)
)
)
)
)
)

Case No. 19-969M (NJ)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

See Attachment A

located in the Eastern District of Wisconsin, there is now concealed:

See Attachment B

The basis for the search under Fed. R. Crim P. 41(c) is:
- ☒ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of: 18 USC 1951(a), 924(c), and 922(g).

The application is based on these facts: See attached affidavit.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days:_____) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

ATF Special Agent Frank Rutter
_____
Printed Name and Title

Sworn to before me and signed in my presence:

Date: November 21, 2019

_____
Judge's signature

City and State: Milwaukee, Wisconsin

Nancy Joseph, U.S. Magistrate Judge
_____
Printed Name and Title

# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A SEARCH WARRANT

I, Frank Rutter, being first duly sworn on oath, on information and belief state:

## I. INTRODUCTION, BACKGROUND, TRAINING, AND EXPERIENCE

1. I make this affidavit in support of an application for a search warrant for the search of three electronic devices, as further described below and in Attachment A.

2. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), and have been since 2015. As an ATF Agent, I have conducted firearms trafficking investigations involving violations of 18 U.S.C. § 922(a)(6), commonly referred to as "lying and buying" as well as investigations related to the unlawful use and possession of firearms by previously convicted felons in violation of 18 U.S.C. § 922(g)(1). Additionally I have conducted and participated in investigations involving violations of 18 U.S.C. § 924(c) (Use of a firearm in furtherance of crime of violence or drug trafficking crime). I have had a variety of formal, informal, and on the job training in the investigation of illegal firearms possession and trafficking. I have participated in the execution of search warrants in which firearms were seized; and I am familiar with the street name(s) of firearms and firearm related topics.

3. Based on the facts set forth in this affidavit, there is probable cause that Maurice Tolbert and Richard Tolbert conspired to commit and committed the armed robberies of multiple cellular phone stores between October 2, 2019 and October 29, 2019, in violation of Title 18, United States Code, Sections 1951(a) (Hobbs Act robbery) and 924(c) (use of a firearm during a crime of violence). Additionally, there is probable cause that on or about October 7, 2019, and October 29, 2019, Maurice Tolbert possessed firearms after having been convicted of a felony, in violation of Title 18, United States Code, Section 922(g) (felon in possession of a firearm). There

is also probable cause to search the information described in Attachment A for evidence of these crimes as further described in Attachment B.

4. This affidavit is based upon my training and experience, my personal knowledge and information reported to me by other federal, state, and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable. This affidavit is also based upon police reports, surveillance videos, law enforcement surveillance, physical evidence recovered, and witnesses' statements that I consider to be reliable as set forth herein.

5. Because this affidavit is submitted for the limited purpose of obtaining a search warrant, I have not included each and every fact known to me concerning this investigation. I have attempted to set forth only the facts that I believe are pertinent to establishing the necessary foundation for the search warrant.

## II. DESCRIPTIONS OF THE PROPERTY TO BE SEARCHED

6. As further described in Attachment A, the property to be searched are the following electronic devices, which are all currently in evidence at the Milwaukee Police Department, and are collectively referred to as "Devices":

   a. A black Apple iPhone, currently under Milwaukee Police Department Property Inventory # 19038536, Item #15;

   b. A black G drive external hard drive, currently under Milwaukee Police Department Property Inventory # 19038536, Item #6; and

   c. A silver G drive external hard drive, currently under Milwaukee Police Department Property Inventory # 19038536, Item #22.

## III. PROBABLE CAUSE

7. On October 2, 2019, in the morning, an employee at the AT&T store located at 3543 South 27th Street, Milwaukee, Wisconsin, reported to the Milwaukee Police Department that at about 10:45 a.m. he had noticed a blue 4 door Hyundai Elantra backed in by a dumpster near

2

the store. The car was occupied by two individuals who ducked down as he drove past them. Inside the store, the employee saw a black male approach the front door and attempt to open it. The employee stated that since a previous armed robbery on September 20, 2019, they keep the front door locked and only open it for customers. The subject then turned and walked away in the direction of the Hyundai. The employee left the store and drove thru the parking lot. He saw the subject getting into the passenger door of the Hyundai. The employee took a photograph of the blue Hyundai with his cell phone as the car left the parking lot

8. Based upon the witness description and the recovered surveillance footage, the driver was a black male, wearing black clothing and weighing approximately 240 pounds. The passenger was a black male, early 30's, 5'8" to 5'9" tall, approximately 200 pounds, dark complexion, wearing a white baseball cap, zippered gray hooded sweatshirt with "Everlast" across the chest, bleached/distressed style blue jeans, black gloves, and a black sunglasses.

9. On October 2, 2019, at approximately 7:49 p.m., two masked subjects entered the Sprint store located at 4550 South 27th Street, Milwaukee, Wisconsin. Subject #1 demanded an employee go to the back room of the store. Subject #2, armed with a black handgun, threatened the victims that if they moved he would shoot them. Subject #1 told Subject #2 to have the other victims moved into the back room. The subjects demanded the employee open the safe where the cellular telephones were kept. Once the safe was open, the cellular phones were placed into black garbage bags. The subjects fled. Sprint was a business involved in interstate commerce at the time of the robbery.

10. Based upon witnesses' descriptions and the recovered surveillance footage, Subject #1 was a black male, approximately 30 years of age, approximately 5'7" tall, approximately 365 pounds, heavy build, wearing a black hooded sweatshirt, gray pants, black shoes, gloves, and a black face mask. Subject #2 was described as a black male, approximately 25 years of age,

3

approximately 5'10" tall, approximately 170 pounds, medium build, wearing a zippered gray hooded sweatshirt with "Everlast" across the chest, bleached/distressed style blue jeans, gloves, and a black mask. The firearm, which was brandished during the robbery, was described as a black, semi-automatic handgun.

11. Law enforcement collected video from the Sprint store and conducted a canvas in the area, which resulted in several surveillance videos being recovered and reviewed. These videos captured the subjects exiting from and fleeing in a blue Hyundai Elantra.

12. On October 7, 2019, at approximately 12:18 p.m., an armed and masked subject entered the Sprint store located at 1316 South 1st Street, in Milwaukee, Wisconsin. The subject was armed with a handgun. The subject demanded phones to be placed into the bag he produced. The subject ordered them to hurry or he would shoot. After the phones were placed into the bag, the subject fled and was observed entering a blue hatchback sedan parked in front of the store. Over 20 devices were taken in the robbery. Sprint was a business involved in interstate commerce at the time of the robbery.

13. Based upon witnesses' descriptions and the recovered surveillance footage, the subject is described as a black male, approximately 230 pounds, heavy build, wearing a black ski mask, black hooded sweatshirt, gray jogging pants and gloves. The firearm, which was brandished during the robbery, was described as a black semi-automatic handgun.

14. Law enforcement collected video from the Sprint store and conducted a canvas in the area, which resulted in several surveillance videos being recovered and reviewed. These videos captured a blue Nissan Versa parked in the area before the robbery, from which the subject exited. After the robbery, the subject returned to the vehicle and put the black garbage bag in the trunk. The subject then drove away. The rear of the Versa had the make and model identifiers covered.

15. On October 29, 2019, at approximately 11:34 a.m., two masked subjects entered the T-Mobile store, located at 1528 South 108th Street, West Allis, Wisconsin. One subject was armed with a silver and black handgun. The victims were forced into a back room of the store and told to lie down. A store employee was told to open the safe containing cell phones and another safe that contained cash. The phones were placed into black garbage bags. The cash, consisting of two $100 bills, two $50 bills, and rolls of quarters, was taken. The subjects then fled the store. T-Mobile was a business involved in interstate commerce at the time of the robbery.

16. Based upon witnesses' descriptions and the recovered surveillance footage, Subject #1 was described as a black male, possibly in his 30s, 5'8" to 5'9" tall, approximately 250 pounds, wearing a gray ski mask, dark navy blue puffy jacket, and gloves. Subject #2 was described as a black male, possibly in his 30s, approximately 6'0" tall, approximately 200 pounds, wearing a gray mask, dark clothing, and gloves. The firearm, which was brandished during the robbery, was described as a silver and black semi-automatic handgun.

17. Responding squads tracked the subject vehicle, identified as a blue Hyundai Elantra, which fled at a high rate of speed when officers attempted to stop the vehicle. As squads pursued the Elantra, it crashed in the alley in the 1300 block of South 37th Street, Milwaukee. Richard Tolbert exited the front passenger door and attempted to flee on foot but had a physical injury and was taken into custody. After a police perimeter was established and officers conducted a search of the area, Maurice Tolbert was taken into custody hiding in some foliage at the rear of 1313 South 35th Street. Law enforcement recovered the key fob to the Elantra where Maurice Tolbert was hiding.

18. The make and model emblems of the Elantra were covered with black electrical tape and a Wisconsin license plate, which was subsequently determined to have been reported as stolen, was attached over the Illinois plate registered to the Elantra, AZ-31096.

19. Along the flight path of the Elantra, officers recovered a loaded Taurus G2C 9mm silver and black handgun, bearing serial number TMD66339. This firearm had previously traveled in interstate commerce.

20. A Wisconsin State search warrant was executed on the Elantra. The items stolen from the T-Mobile were recovered in the trunk. Clothing, masks, and gloves consistent with the witnesses' descriptions and surveillance video in the T-Mobile robbery were located in the Elantra. Additionally, a black mask consistent with the masks worn in the October 2, 2019 and October 7, 2019 robberies was recovered from the Elantra. No personal cell phones were recovered.

21. A check of the Milwaukee County Criminal Justice Facility records for Maurice Tolbert reflected that A.P., 18XX West Wells, Milwaukee, WI, with phone number 414-865-3055 was listed as his emergency contact.

22. On November 1, 2019, at approximately 12:50 p.m., Maurice Tolbert called phone number 414-865-3055 from custody. During the recorded call, Maurice Tolbert identified the female as "Angel." He further provided her with the passcode to his phone, 329726, and information associated with his Apple ID (Grindfamily1@gmail.com, Lovelifeloyalty12). Based on that phone conversation, it was reasonable to assume that A.P. was in possession of Maurice Tolbert's phone and had access to Maurice Tolbert's stored iCloud information.

23. Based on my training and experience, I know that evidence of armed robberies is commonly found on the cellular phones belonging to the armed robber(s). This evidence often includes web-based searches for cellular telephone stores, contacts with individuals who purchased the stolen devices after the robberies, photographs of robbery proceeds or firearms used, price lists for the stolen phones, communication with co-conspirators, discussions related to, and the source of, any weapons used, and other similar evidence. In addition, I know that evidence found on cellular devices is commonly backed up, or stored, in "cloud" type services in the event a device

6

is lost, stolen or damaged. As a result, law enforcement seeks access to Maurice Tolbert's stored iCloud information.

24. Records show that the recovered handgun, the Taurus G2C 9mm pistol bearing serial number TMD66339, was purchased by A.P. on October 6, 2019, the day before the October 7, 2019 Sprint robbery in which a consistent handgun was brandished. A.P. purchased the handgun at Dunham's Discount Sports, at 2550 South 108th Street, West Allis, WI. The purchase records reflect that A.P. provided her address as 11XX South Layton Blvd., Milwaukee, Wisconsin.

25. Maurice Tolbert is a convicted felon, and is therefore not lawfully allowed to purchase or possess a firearm himself.

26. On November 13, 2019, a Milwaukee Police Officer observed a gray Jeep Grand Cherokee with a REO Motors Dealer placard parked across the street from the apartment located at 508 North 28th Street. The Officer recorded the VIN on the vehicle as 1J4RR6GT8BC558075. A query of VIN 1J4RR6GT8BC558075 identified the registered owner as A.P., with listed address of 11XX South Layton Blvd., Milwaukee, Wisconsin, license plate AHC-6404.

27. On November 14, 2019, law enforcement conducted surveillance at 508 North 28th Street, Milwaukee, WI. At approximately 6:40 a.m., officers observed A.P. exit the apartment and brush snow off the gray Jeep Cherokee bearing REO Motors Dealer placard. A.P. returned to 508 North 28th Street and exited a few minutes later with two children. They entered the Grand Cherokee and departed.

28. On November 15, 2019, law enforcement officers executed a federal search warrant on the residence at 508 N. 28th Street, in Milwaukee. Various items of evidentiary value were recovered including, but not limited to, firearm boxes and records, ammunition, firearm magazines, cellular devices, and drug paraphernalia such as a "kilo press." Officers also recovered

7

some of the clothing consistent with the clothing worn by one of the suspects in the October 2, 2019 robbery and the October 7, 2019 robbery.

29. Officers also recovered at the residence the following electronic devices: a black Apple iPhone, currently under Milwaukee Police Department Property Inventory # 19038536, Item #15; a black G drive external hard drive, currently under Milwaukee Police Department Property Inventory # 19038536, Item #6; and a silver G drive external hard drive, currently under Milwaukee Police Department Property Inventory # 19038536, Item #22. The black iPhone was recovered from the pocket of a black jacket. A.P. identified the telephone as one of Maurice Tolbert's two phones. A.P. stated that she sold Maurice Tolbert's other phone after he was arrested, based upon his instructions.

30. Additionally, A.P. was interviewed regarding her knowledge of and involvement in the criminal violations being investigated. During this interview, A.P. explained that she had purchased multiple firearms for her boyfriend, Maurice Tolbert, who she knew to be a convicted felon. Ultimately, A.P. admitted to purchasing at least five firearms for Maurice Tolbert. A.P. explained that she does not know how firearms operate, and would never have purchased a firearm on her own because she felt she did not need to own firearms. Maurice Tolbert accompanied her to the gun stores, selected the firearms, and provided the cash to purchase the firearms on all but two (2) occasions. Maurice Tolbert then was the primary owner of the firearm. A.P. explained instances when Maurice Tolbert would return home and state he had been robbed and someone had stolen his firearm which would lead to her purchasing another firearm for him.

31. A.P. viewed still photos from the October 2, 2019 casing incident and robbery and the October 7, 2019 robbery. A.P. identified the suspect in the October 2, 2019 casing incident as someone who "favored" Richard Tolbert, although she had only seen Richard Tolbert on a couple

8

of occasions. A.P. identified the firearm in the October 7, 2019 robbery as the firearm she purchased on October 6, 2019 from Dunham's for Maurice Tolbert.

32. During the interview with investigators, A.P. provided her telephone number as 414-865-3055 and provided Maurice Tolbert's telephone number as 312-978-8447. In A.P.'s phone, telephone number 312-978-8447 was listed under contact name "Hub," which I believe refers to hubby or A.P.'s boyfriend.

33. Since A.P.'s interview, investigators have obtained firearms purchase records from several federal firearms dealers. In total, investigators have collected documents showing that A.P. has purchased at least six firearms since 2013. Those records reflect that on the following dates, A.P. purchased the following firearms:

a. January 6, 2013 – A.P. purchased one (1) firearm from Cabela's (FFL: 3-41-02642) located at 20200 Rogers Drive in Rogers, MN.

   i. Manufacturer: North American Arms, Model: Mini, SN: E244884, Type: Revolver, Caliber: .22

b. December 1, 2017 – A.P. purchased one (1) firearm from Cabela's (FFL: 3-41-04460) located at 8400 Hudson Road, Woodbury, MN.

   i. Manufacturer: Sccy Ind., Model: CPX-2, SN: 550661, Type: Pistol, Caliber: 9mm

c. March 11, 2019 – A.P. purchased one (1) firearm from Gander Outdoors (FFL: 3-31-09388) located at 6802 118th Avenue, Kenosha, WI.

   i. Manufacturer: Taurus International, Model G2C, SN: TLO79819, Type: Pistol, Caliber: 9mm

d. April 11, 2019 – A.P. purchased one (1) firearm from Gander Outdoors (FFL: 3-31-09388) located at 6802 118th Avenue, Kenosha, WI.

i. Manufacturer: Glock, Model 26, SN: BGBS346, Type: Pistol, Caliber: 9mm

e. May 20, 2019 – A.P. purchased one (1) firearm from Gander Outdoors (FFL: 3-31-09388) located at 6802 118th Avenue, Kenosha, WI.

i. Manufacturer: Taurus International, Model G2C, SN: TMA80238, Type: Pistol, Caliber: 9mm

f. October 6, 2019 – A.P. purchased one (1) firearm from Dunham's (FFL: 3-39-17457) located at 2550 S. 108th Street, West Allis, WI.

i. Manufacturer: Taurus International, Model: G2C, SN: TMD66339, Type: Pistol, Caliber: 9mm

34. On November 19, 2019, SA Rutter reviewed publicly viewable portions of Facebook accounts and located Facebook profile with vanity name "Grind At Godspeed" (Facebook User ID 100014374597965).

35. SA Rutter located a Minnesota Department of Transportation (DOT) driver's license image (dated 4/23/18) of Maurice Tolbert and compared it to the publicly viewable images on the aforementioned Facebook page "Grind At Godspeed" – ID 100014374597965. The images appeared consistent and to represent the same individual.

36. During further review of the publicly viewable portion of the Facebook page "Grind At Godspeed" – ID 100014374597965, SA Rutter located multiple links to a YouTube music video titled "HE SAY SHE SAY MR.GRIND F/ AK OF DO OR DIE (OFFICIAL VIDEO)." This video was posted June 20, 2019 by "Mr. Grind." In the video, Maurice Tolbert is in possession of what appeared to be a small Glock-style handgun with an extended magazine. Below are two (2) screenshots from the aforementioned video.





37. The handgun shown in the video appears consistent with the Glock model 26 pistol purchased by A.P. on April 11, 2019. Additionally, three (3) Glock 9mm magazines were

recovered during the aforementioned search warrant at 508 N. 28th Street in Milwaukee, WI on November 15, 2019.

## IV. TECHNICAL TERMS

38. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

   b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

   c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

## V. ELECTRONIC STORAGE AND FORENSIC ANALYSIS

39. Based on my knowledge, training, and experience, as well as my conversations with other Special Agents of the Federal Bureau of Investigation, who are experienced with electronic communication systems, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the Devices. This information can sometimes be recovered with forensics tools.

40. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of use, who used it, and when.

41. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to, computer-assisted scans of the entire medium that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

42. *Manner of execution.* Because this warrant seeks only permission to examine

devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premise. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## VI. CONCLUSION

43. Based on the facts contained within this affidavit, I believe that probable cause exists to search the Devices, which are more particularly described in Attachment A, and which are currently located in evidence at the Milwaukee Police Department, for evidence of armed robberies and felon in possession of a firearm.

## ATTACHMENT A

The following property is to be searched:

a. A black Apple iPhone, currently under Milwaukee Police Department Property Inventory # 19038536, Item #15;

b. A black G drive external hard drive, currently under Milwaukee Police Department Property Inventory # 19038536, Item #6; and

c. A silver G drive external hard drive, currently under Milwaukee Police Department Property Inventory # 19038536, Item #22.

This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

# ATTACHMENT B

1.  All records on the Devices described in Attachment A that relate to violations of Title 18, United States Code, Section 1951(a) (Hobbs Act robbery); Title 18, United States Code, Section 924(c) (Use of Firearm during Crime of Violence); and Title 18, United States Code, Sections 922(g) (Felon in possession of Firearm), involving Maurice Tolbert, Richard Tolbert, or any co-conspirators, which was in active memory of the Devices as November 15, 2019, to include:

    a.  any information related to possession of firearms or ammunition (including photographs, text messages, emails, or any other communication information);

    b.  any information recording any targets' schedule or travel in September or October 2019;

    c.  any web search information related to the offenses described above, including web searches for cell phone stores or firearms;

    d.  photographs of any of the victim businesses or other cell phone stores evidencing pre-robbery surveillance or vehicles or people related to the offenses described above;

    e.  any communications via text messages, email, Facebook, Twitter, or other web-based applications between the subjects and others regarding the offenses described above; and

    f.  all bank records, checks, credit card bills, account information, and other financial records.

2.  Evidence of user attribution showing who used or owned the devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of electronic storage and any photographic form.